**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sukhi Ghuman, et al., | No. CV-20-02474-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Nicolas Nicholson, | |
| Defendant. | |

Before the Court is Nicolas Nicholson's motion to dismiss for lack of personal jurisdiction, which is fully briefed. (Docs. 5, 8, 9.) For the following reasons, Mr. Nicholson's motion is denied.

Presuming the facts as raised in the complaint to be true for the purposes of this order, this case arises from alleged injuries suffered by Sukhi and Karin Ghuman stemming from Mr. Nicholson's—a resident of United Kingdom ("U.K.")—attempts to collect on a judgment against Mr. Ghuman. The Ghuman family lived in the U.K. through November 2012. (Doc. 1-3 at 3.) While a U.K. resident, Mr. Ghuman was involved with a security firm known as Octavian Security Limited. (*Id.*) In November 2012, Mr. Ghuman moved to Scottsdale, Arizona, and his wife and children joined him soon after. In 2015, an involuntary bankruptcy petition was filed against Mr. Ghuman in the U.K. (*Id.*) Following his failure to appear in the action, an involuntary bankruptcy judgment was entered against him (the "U.K. Judgment"). (*Id.*) Thereafter, Mr. Nicholson, as liquidator of Octavian

Security Limited, resorted to harassing behavior while attempting to collect on the U.K. Judgment.

Particularly, in mid-to-late 2018, Mr. Nicholson recurrently called Mrs. Ghuman at her Arizona number to make personal threats and similarly called Mr. Ghuman and sent menacing text messages to his Arizona number while the couple resided in Arizona. (*Id.* at 5.) During the same period, Mr. Nicholson repeatedly called Sukhbinder Khangura at his personal Arizona number. Mr. Khangura is an Arizona resident and the owner of Khangura Development, LLC, an Arizona company that offered Mr. Ghuman a job. (*Id.* at 5-6.) During his calls to Mr. Khangura, Mr. Nicholson informed him of the U.K. Judgment, threatened to impose a lien on Khangura Development's assets should it move forward with hiring Mr. Ghuman, and argued that Mr. Ghuman could not legally work because of the U.K. Judgment. (*Id.* at 6.) In December 2018, Mr. Khangura explained to Mr. Ghuman that, because of Mr. Nicholson's calls, he had withdrawn the employment offer. (*Id.*)

Around this time, Mr. Ghuman also sought to establish a pan-African security company, Octavian Africa, in partnership with Steven Giles. (*Id.* at 7.) However, Mr. Nicholson made calls to Mr. Giles that mirrored those made to Mr. Khangura. (*Id.*) As a result, in late 2018, Mr. Giles requested that Mr. Ghuman cease involvement in the pan-African operation. (*Id.*) Thereafter, Mr. Ghuman attempted to do business with Kevin Johnston, an Arizona resident who expressed interest in investing in Mr. Ghuman's Arizona business, Octavian Security America, LLC. (*Id.*) In March 2019, Mr. Nicholson called Mr. Johnston at his Arizona number, making similar representations to those he made to Mr. Khangura and Mr. Giles. In response, Mr. Johnston terminated his discussions with Mr. Ghuman, citing Mr. Nicholson's communications. (*Id.*)

On November 19, 2020, Mr. and Mrs. Ghuman filed a complaint against Mr. Nicholson in Maricopa County Superior Court. (Doc. 1-3.) Mr. Nicholson thereafter removed the action on December 28, 2020. (Doc. 1.) Plaintiffs' operative complaint brings state law claims for intentional interference with contract, tortious interference with

business expectancies, and intentional infliction of emotional distress. (Doc. 1-3.) On December 30, 2020, Mr. Nicholson filed the instant motion to dismiss for lack of personal jurisdiction, which is now ripe.

When faced with a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). If the Court, as here, decides the motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of the jurisdictional facts and "[c]onflicts between the parties over statements contained in affidavits must be resolved in plaintiff's favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Personal jurisdiction may be general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Because Plaintiffs concede the absence of general jurisdiction, the Court will focus its analysis on specific personal jurisdiction.

To establish specific personal jurisdiction over a non-resident defendant, the following three-prong test must be met: (1) the defendant purposefully directed its activities or consummated some transaction with the forum or a resident thereof; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable so as to comport with fair play and substantial justice. *Dole Food Co., Inc. v. Watts*, 3030 F.3d 1104, 112 (9th Cir. 2002). The plaintiff has the burden of proving the first two prongs. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff is successful, the burden shifts to defendant to show that being subject to the jurisdiction of the forum state would be unreasonable. *Id.* Applying the three-prong test to the facts construed in Plaintiffs' favor,[1] the Court concludes that exercise of specific personal jurisdiction over Mr. Nicholson is proper.

Plaintiffs satisfy their burden on the first two prongs. First, purposeful direction occurs when a defendant "(1) committed an intentional act, (2) expressly aimed at the

---

[1] Mr. Nicholson spends most of his motion and reply disputing the truth of Plaintiffs' allegations and attacking Plaintiffs' credibility. A motion to dismiss for lack of jurisdiction is not the proper avenue to resolve factual disputes or to assess credibility.

forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011) (citation omitted).  Here, Plaintiffs allege that Mr. Nicholson intentionally engaged in harassing behavior by contacting several people he knew to be Arizona residents in a targeted effort to harm the Ghuman family's economic and personal prospects in Arizona to ultimately pressure Mr. Ghuman to submit to collection demands.  These allegations adequately demonstrate that Mr. Nicholson's actions were intentional, aimed at the forum state, and likely to cause Plaintiffs harm in Arizona.  Second, Plaintiffs' claims arise directly out of Mr. Nicholson's forum-related activities because, per Plaintiffs' allegations, but for Mr. Nicholson's communications directed at the forum, Plaintiffs would not have been injured.[2]  *See Panavision Int'l LLP v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

The burden now shifts to Mr. Nicholson to show that being subject to the forum's jurisdiction would be unreasonable.  The party seeking to avoid jurisdiction carries a "heavy burden of rebutting the strong presumption in favor of jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (citing *Sher v. Johnson*, 911 F.2d 1357 1364 (1990)).  Mr. Nicholson has not met this burden, here.  In evaluating the reasonableness of exercising jurisdiction, the Court applies a seven-factor balancing test that weighs:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). The Court will address each of these factors, in turn.

First, although Mr. Nicholson never physically stepped foot in Arizona, his purposeful interjection into Arizona's affairs was not insignificant.  He placed numerous

---

[2] Mr. Nicholson only disputes the applicability of the second prong by arguing that he did not make any of the communications alleged by Plaintiffs.  However, such denials in the face of affidavits to the contrary indicate the existence of material disputes of fact, which are not resolved at the motion to dismiss phase.

calls and sent texts to Arizona numbers, repeatedly communicating with individuals that he knew or should have known were Arizona residents in an effort to interfere with the Ghuman family's personal and economic affairs in Arizona.  Second, the burden resulting from requiring Mr. Nicholson, a resident of the U.K who has never been to Arizona, to litigate this matter here is moderate.  However, "[u]nless such inconvenience is so great as to constitute a deprivation of due process, [this factor] will not overcome clear justifications for the exercise of jurisdiction."  *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) (citation omitted).  Here, the inconvenience Mr. Nicholson will experience while litigating in Arizona hardly equates to a deprivation of due process.  Rather, the Court, especially since the onset of the COVID-19 pandemic, has conducted almost all matters remotely, which significantly reduces the burden of participation on foreign litigants.  Third, while the very act of asserting jurisdiction over a foreign resident likely spurs some conflict with the defendant's home state's sovereignty, Mr. Nicholson has not persuaded the Court that the U.K. has a particular sovereign interest in the current matter.

Fourth, Arizona has a strong interest in adjudicating this action, which alleges the commission of torts against multiple Arizona residents, because states have a "manifest interest in providing an effective means of reparation for its residents tortiously injured by others."  *See Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987).  Fifth, Arizona is the best locale to ensure efficient judicial resolution of the controversy.  Both Plaintiffs, most witnesses, and all records relating to Mr. Ghuman's business, Khangura Development, and the economic and personal damages suffered by Plaintiffs are located in Arizona.  Sixth, in order to obtain convenient and effective relief, Plaintiffs have a strong interest in litigating in their home state of Arizona.  As explained above, Plaintiffs have resided in Arizona for the better part of a decade, their affected business is domiciled in Arizona, most of their lost business opportunities involved Arizona ventures, and the majority of their witnesses and records are in Arizona.  Moreover, Arizona law provides Plaintiffs an avenue to potentially obtain recovery for the claims raised, whereas Mr. Nicholson has not

made clear the extent to which British law provides for similar redress.[3]

Looking to the first six factors, the Court concludes that Mr. Nicholson has not shown Arizona to be an unreasonable forum. Therefore, the seventh factor, which addresses whether an alternative forum exists—only following a showing that the forum state is an unreasonable forum—is a non-issue. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 P.3d 1066, 1080 (9th Cir. 2011). In sum, the Court concludes that exercise of personal jurisdiction over Mr. Nicholson is proper.[4] Accordingly,

**IT IS ORDERED** that Mr. Nicholson's motion to dismiss (Doc. 5) is **DENIED.**

Dated this 22nd day of February, 2021.

Douglas L. Rayes
United States District Judge

---

[3] Mr. Nicholson references that British law does recognize claims for slander. However, Plaintiffs do not raise any defamation claims.

[4] In his reply, Mr. Nicholson requests that, should the Court find jurisdiction appropriate, it grant the parties leave to conduct only limited jurisdictional discovery, prior to opening discovery in its entirety, to determine whether the phone calls and text messages were, in fact, made. "Arguments 'not raised clearly and distinctly in the opening brief' are waived." *Avila v. Los Angeles Police Dep't.*, 758 F.3d 1096, 1101 (9th Cir 2014) (quoting *McKay v. Ingleson*, 558 F.3d 888, 891 n. 5 (9th Cir. 2009).